UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 14-mj-04172 |
| | ) | |
| 2.  JAMES MATTHEW MERRILL, | ) | |
| Defendant | ) | |

**OPPOSITION TO DEFENDANT JAMES MERRILL'S MOTION FOR
ORDER RELEASING SEIZED FUNDS NECESSARY FOR LEGAL DEFENSE**

The defendant James Matthew Merrill ("Merrill" or the "Defendant"), who admits that he presently has, at a minimum, $325,000 in unrestrained assets, nonetheless argues that he is entitled to a hearing and, ultimately, to the release of more than $4 million for his legal defense.

The funds Merrill asks the Court to release, however, are investor funds – money victims gave to TelexFree during the course of the alleged fraud. They were seized by the United States to preserve them during the pendency of the litigation, and to ensure that they are available for restitution to the  hundreds of thousands of victims of the charged fraud, who suffered tens (if not hundreds) of millions in losses. The Defendant cannot use forfeitable, victim funds to pay for his defense, much less an unusually expensive one. Nor does he provide any evidence that he even needs the funds to retain counsel of his choice (indeed with $325,000 in the bank, nor can he). Finally, the Defendant does not argue that funds seized by the United States derive from any source other than TelexFree proceeds. Because he fails to meet these threshold requirements, his request for a hearing must be denied.

## I.      FACTUAL BACKGROUND

On May 9, 2014, this Court issued a Criminal Complaint charging Merrill and Carlos Wanzeler ("Wanzeler") with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.

*See* Docket No. 2.  The Criminal Complaint was supported by the Affidavit of John S. Soares,

Special Agent with the United States Department of Homeland Security (the "Soares Affidavit").

The Soares Affidavit states that TelexFree, of which Merrill and Wanzeler were principals, sold

some amount of  "voice-over-internet-protocol" ("VOIP") telephone services, but in reality operated

a pyramid scheme that (according to the profit and loss statements submitted by TelexFree to the

Massachusetts Securities Division) generated more than $1 billion in gross proceeds.

 Less than a month earlier, on April 15, 2014, the Securities and Exchange Commission

(the "SEC") filed a civil enforcement action in the United States District Court for the District of

Massachusetts against Merrill, Wanzeler, TelexFree, and others.  *See Securities and Exchange*

*Commission v. TelexFree, Inc. et al*, Civil Action No. 14-11858-NMG (the "SEC Action").  On

April 16, 2014, the Court issued a restraining order against the assets of Merrill and the other

named defendants in the SEC Action.  *See* SEC Action, Docket No. 13.

 Merrill was arrested on May 9, 2014.  Wanzeler is a fugitive and is believed to be located

in Brazil.  Merrill was initially represented by appointed counsel, however, on June 2, 2014 his

appointed lawyer withdrew from her representation, and retained counsel filed an appearance.  *See*

Docket Nos. 24, 26.

 After Merrill's arrest, the United States moved for pretrial detention based upon risk of

flight.  Ultimately the Court granted pretrial release of Merrill secured by a $900,000 bond.  *See*

Docket No. 47.  The grant of pretrial release was issued after two evidentiary hearings.  *See* Docket

Nos. 20 and 39.  The evidentiary hearings included substantial testimony regarding the merits of

the criminal charges filed against Merrill, including two hours of cross examination of the

Government's witness about the relative strength of the government's case.  *See e.g.,* June 5, 2014

Transcript of Motion Hearing before the Honorable Timothy S. Hillman, D.J.  In the June 17, 2014

Memorandum of Decision on Defendant James Merrill's Motion to Revoke Detention Order and for Pretrial Release, the Court held that

> The evidence shows that Merrill had a key role in TelexFree, that there is a significant disparity between the revenue generated from the actual sale of the VOIP product versus revenue from promoter buy-in fees, and that it is likely that TelexFree officers made misrepresentations regarding the nature and health of the company. The government does not deny that TelexFree was a real company that sold an actual product, or that it does not yet know exactly how much revenue was generated from sales of the VOIP product. *While the weight of the evidence may not yet be overwhelming, the government has presented a strong case against Merrill at this preliminary stage.*

*See* Docket No. 47, p. 9.

On April 24, 2014, prior to issuance of the Criminal Complaint, the United States applied for 37 seizure warrants for assets that it alleged were proceeds of, or property involved in, criminal violations giving rise to forfeiture. *See* United States District Court for the District of Massachusetts, 14-mj-4116-DHH through 14-mj-4152-DHH. Included among the assets seized when the seizure warrants were executed were the following:

| Account | Account Holder | Amount Seized |
|---|---|---|
| Middlesex Savings Bank, account no. *****8181 | Cleaner Image Associates | $10,643.00 |
| Middlesex Savings Bank, account no. *****6876 | James and Kristin Merrill | $104,988.64 |
| Waddell & Reed, account no. 3****5999 | James Merrill | No funds |
| Waddell & Reed, account no. ****1090 | James and Kristin Merrill | $3,985,097.33 |
| Waddell & Reed, account no. ****6892 | James Merrill | $79,684.28 |
| **Total** | | **$4,180,413.25** |

As Merrill states in his Motion for Order Releasing Seized Funds (the "Motion for Release"), the assets seized by the United States are not the only assets of Merrill. As detailed in his Motion for Release, after entry of the restraining order in the SEC Action, Merrill and the SEC agreed to the release of assets held in six accounts that were previously subject to the restraining order. Of these six accounts, one was Waddell & Reed, account no. ****6892 listed in the chart above, from which the United States seized $79,684.28. The value of the other five accounts resealed in the SEC Action totals $328,191. *See* Motion for Release, Docket No. 53, p. 3-4.

In his Motion for Release Merrill does not assert that the only assets he owns are those seized by the United States and the $328,191 released by agreement with the SEC. Nor does Merrill provide any information regarding what other assets he owns. It cannot be disputed, however, that he has other assets. For example, Merrill owns at least one real property, located in Ashland, Massachusetts, which was used, in part, to secure the $900,000 bond required as a condition of his pretrial release. *See* Docket No 47, p. 13.

Merrill's Motion for Release is also devoid of any information regarding his access to other assets, such as current family income, or his ability to obtain assets from other family members or other third parties. Merrill's ability to access assets from other sources, likewise, cannot be disputed. His conditions of release rely upon the support of friends and family, who pledged two additional real properties to secure the $900,000 bond used to secure his pretrial release. *Id*.

## II.   ARGUMENT

"Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Kaley v. United States*, ___ U.S. ___, 134 S.Ct. 1090, 1094 (2014) (quoting *Caplin & Drysdale, Chartered v.*

*United States*, 491 U.S. 617, 630 (1989)).  "Accordingly, 'there is a strong governmental interest in obtaining full recovery of all forfeitable assets.'"  *Id*.  In enacting forfeiture laws, "Congress decided to give force to the old adage that 'crime does not pay.'"  *United States v. Monsanto*, 491 U.S. 600, 614 (1989).  In holding that forfeitable assets may not be used to pay attorney's fees, the Supreme Court said, "[w]e find no evidence that Congress intended to modify that nostrum to read, 'crime does not pay, except for attorney's fees.'"  *Id*.  Forfeitures serve several purposes, in addition to utilizing forfeiture to punish criminals and deprive them of their ill-gotten gains, the "Government also uses forfeited property to recompense victims of crime" in victim cases such as the instant matter.  *Kaley*, 134 S.Ct. at 1094.

In *Monsanto*, the Supreme Court held that pretrial restraint of assets is "constitutionally permissible whenever there is probable cause to believe that the property is forfeitable," meaning "probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."  *Kaley*, 134 S.Ct. at 1095 (citing *Monsanto*, 491 U.S. at 615, n. 10.).

Accordingly, the question before this Court is not whether the Defendant is entitled to the release of forfeitable proceeds to pay for his legal defense.  The Supreme Court has answered that question time, and time, and time again in the negative.  *See Kaley*, 134 S.Ct. at 1094, *Monsanto*, 491 U.S. at 616, *Caplin & Drysdale*, 491 U.S. at 635.  Rather, the question here is whether the Defendant is entitled to a hearing to challenge the probable cause finding that he committed an offense permitting forfeiture, and that the seized assets have the requisite nexus to that crime.  This question should likewise be answered in the negative, as the Defendant has not submitted any evidence that he has no assets, other than those seized, to pay private counsel, and likewise has submitted no evidence that the seized assets lack the requisite nexus to the charged

crime.  *See e.g. United States v. Farmer*, 274 F.3d 800, 804-5 (4th Cir. 2001); *United States v.*

*Jones*, 160 F.3d 641, 647 (10th Cir. 1998).

> A.    <u>**The Defendant Is Not, as a Matter of Course, Entitled to an Evidentiary**</u>
>        <u>**Hearing as He Must First Make a Threshold Showing.**</u>

The Defendant argues that the United States, in *Kaley*, conceded that a defendant may be

entitled to an evidentiary hearing as to the traceability issue of seized or restrained funds.  *See*

Motion for Release, pp. 5-6.  The Defendant's assertion is accurate – to a point.  The United

States agrees that a defendant *<u>may</u>* be entitled to a hearing as to traceability, but the United States

did *<u>not</u>* take the position that a hearing as to traceability is held as a matter of course when

requested by a defendant.  "Due process does not automatically require a hearing and a defendant

may not simply ask for one."  *Jones*, 160 F.3d at 647.  Courts have consistently held that a

hearing is granted only *<u>if</u>* a defendant makes a threshold showing.  *See e.g. Farmer*, 274 F.3d

800, 804-5 (4th Cir. 2001) (defendant must make threshold showing that he has no access to

funds and evidence showing error in finding of nexus between the offense and the asset); *Jones*,

160 F.3d 641, 647 (10th Cir. 1998) (same).  *See also United States v. Yusuf*, 199 Fed. Appx. 127,

132-33 (3d Cir. 2006) (following *Jones*, and *Farmer*, district court must require defendants to

show that they can satisfy the two *Jones* requirements, and then may release funds for attorney's

fees only if the Government fails to establish probable cause); *United States v. Holy Land Found.*

*for Relief & Dev*., 493 F.3d 469, 475 (5th Cir. 2007) (*en banc*) (not expressly adopting *Jones-*

*Farmer* but citing *Jones* with approval and holding that a post-restraint hearing is not necessary

in every case, but may be required when the defendant "needs the restrained funds to pay for

legal defense on associated criminal charges, or to cover ordinary and reasonable living

expenses"); *United States v. Melrose East Subdivision*, 357 F.3d 493, 507 n.17 (5th Cir. 2004)

("the district court generally should not permit a [defendant] to examine the government's

witnesses without first producing some evidence suggesting that the restrained assets were untainted")(citing *Jones*, 160 F.3d at 647); *United States v. Bonventre*, 720 F.3d 126, 131 (2nd Cir. 2013) (adopting the first prong of *Jones-Farmer* but not the second; a defendant is not entitled to a probable cause hearing unless he shows that his Sixth Amendment rights are implicated, but he need not make a formal *prima facie* showing that the initial probable cause finding was erroneous). Further, although the majority in *Kaley* did not address this issue, the dissent noted that such a threshold showing is required. *Kaley*, 134 S.Ct. at 1112 (Roberts, C.J. dissenting) ("To even be entitled to the hearing, defendants must first show a genuine need to use the assets to retain counsel of choice.").

A threshold showing requirement is not a novel concept. Criminal procedure regularly requires a defendant to make a threshold showing before a hearing is granted. As the First Circuit has repeatedly held, "a criminal defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress." *See, e.g., United States v. D'Andrea*, 648 F.3d 1, 2 (1st Cir. 2011). Rather, a "hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." *Id.* (quoting *United States v. Staula*, 80 F.3d 596, 603 (1st Cir.1996)). Similarly, a defendant is not entitled to a *Franks* hearing unless "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

"Such threshold showings 'protect the government and its resources from frivolous challenges' to forfeitures." *Farmer*, 274 F.3d at 805 (quoting *Jones*, 160 F.3d at 647, and

requiring threshold showing for hearing as to assets seized for forfeiture).  Here, the Court should not part ways with jurisdictions across the country, and should require that the Defendant make a threshold showing to establish that a hearing is warranted.  Further, because Defendant provides no evidence to satisfy a threshold showing, his request should be denied.

**B.**     **Because Merrill Fails to Meet a Threshold Showing that He is Entitled to a Hearing His Request Should Be Denied.**

Although the First Circuit has not issued a ruling regarding the use of, or the appropriate factors of, a threshold test, one test in particular has emerged frequently in courts that have considered the issue, with several jurisdictions adopting a two-part test known as the "*Jones-Farmer*" rule.  *See United States v. Jamieson*, 189 F. Supp.2d 754, 757 (N.D. Ohio 2002) (following *Jones*), *aff'd*, 427 F.3d 394 (6th Cir. 2005) (approving district court's decision to apply *Jones*.); *Yusuf*, 199 Fed. Appx. at 132-33 (3d Cir. 2006) (following *Jones, Farmer,* and *Jamieson); United States v. Vogel*, 2010 WL 547344, *2 (E.D. Tex. Feb. 10, 2010) (adopting *Jones-Farmer*, even though the Fifth Circuit has not formally done so, based on favorable statements in *Melrose East* (357 F.3d 493) and *Holy Land Found*. (493 F.3d 469)); *United States v. Buholtz*, 2011 WL 4100918, *3 (E.D. Tex. Aug. 31, 2011) (same); *United States v. Simpson*, 2011 WL 195676, *3-4 (N.D. Tex. Jan. 20, 2011) (same; applying *Melrose East* and *Holy Land Found.*); *United States v. Roy*, 2012 WL 1632821 (N.D. Tex. Apr. 5, 2012) (same; collecting cases from within the Fifth Circuit); *United States v. Lewis*, 2006 WL 1579855, *8-10 (D. Minn. 2006) (applying *Jones-Farmer* and denying defendant's right to a hearing because she could satisfy neither of the two requirements); *United States v. Mueller*, 2008 WL 2890258, *1-2 (D. Minn. 2008) (Rule 65 does not apply in criminal forfeiture cases; the defendant's right to a post-restraint hearing is governed by *Jones-Farmer*); *United States v. Wittig*, 2004 WL 1490406, *2 (D. Kan. 2004) (following *Jones*; claimant has the burden of persuading the court that he has no

8

funds with which to retain counsel of his choosing or to support himself or his family, and that there are assets that should not have been covered by the grand jury's forfeiture provisions and that therefore should not have been burdened by the restraining order).

Under the *Jones-Farmer* rule, first, "a defendant must demonstrate to the Court's satisfaction that []he has no assets, other than those restrained, with which to retain private counsel and provide for [himself] and [his] family." *Jones*, 160 F.3d at 647. Second, "a defendant must make a *prima facie* showing of a *bona fide* reason to believe" that the finding of a nexus between the assets and crime was in error. *Id.* Merrill has not submitted any evidence sufficient to satisfy either prong.

### 1. The Defendant Does Not, and Cannot, Show that He Has No Assets, Other than those Restrained, to Retain Private Counsel.

Although a defendant has the right to retain counsel of his choice, that right is not absolute. A defendant has no right to choose counsel that he <u>cannot</u> <u>afford</u>. *Wheat v. United States*, 486 U.S. 153, 159 (1988), see also *Kaley*, 134 S.Ct. at 1107 (Roberts, C.J., dissenting). In this case, the Defendant admits that he has access to assets that total more than $325,000, and accordingly, cannot show that additional funds are necessary to retain private counsel. This sum, or even a lesser amount, is a significant legal retainer.

In support of his argument that he cannot pay for private counsel, the Defendant points to this Court's finding in May of 2014 that the Defendant qualified for appointment of counsel. *See* Motion for Release, p. 3. That argument ignores, however, the significant change in position just one month later in June 2014, when the Defendant retained private counsel and obtained the agreement with the SEC for the release of more than $325,000 in assets.

In addition to his inability to demonstrate that he does not have assets to retain private counsel, the Defendant has not submitted any evidence to show that he does not have access to

other funds or assets for attorney's fees – whether they be assets he owns, income currently generated by his spouse, or assets of other family or friends. *Jamieson*, 189 F. Supp.2d at 757 (to satisfy the Sixth Amendment requirement, defendant must show he has no access to funds from friends or family); *United States v. Emor*, 794 F. Supp.2d 143, 150 (D.D.C. 2011) (a bare-bones statement that defendant has only $50,000 in cash on hand, multiple dependents and no income is insufficient; nor can defendant wait until the probable cause hearing is commenced to satisfy the requirement; it is a threshold showing that must be made before the hearing); *United States v. Daugerdas*, 2012 WL 5835203, *2 (S.D.N.Y. Nov. 7, 2012) (denying motion to release funds where it was "bereft of any sworn declaration that [Defendant] lacks the financial resources to hire counsel"; conclusory assertion is insufficient); *United States v. Egan*, 2010 WL 3000000, *5-6 (S.D.N.Y. July 29, 2010) (denying defendant's request for a Monsanto hearing where defendant wanted to use the restrained assets for attorney's fees and living expenses even though he had considerable unrestrained assets at his disposal).

In addition to an inability to show that he does not have access to funds, neither can the Defendant show that he needs more than what is currently available to him for his legal defense. Although the Defendant has been charged by criminal complaint, he has not yet been indicted. With the issuance of a criminal complaint, an indictment must issue within the period required under the Speedy Trial Act. Accordingly, at this juncture, unless the Defendant is willing to concede that there is sufficient probable cause for the issuance of an indictment against him, he cannot state whether or not he will have a criminal case to defend. That issue, however, will by statute be resolved long before an attorney could – at any reasonable hourly rate – incur legal fees in excess of the funds currently available to the Defendant.

Because the Defendant does not show that he lacks funds other than those restrained to retain private counsel, his request for a hearing should be denied.

> **2.** **The Defendant Submits No Evidence to Demonstrate an Error in in the Probable Cause Determination that the Seized Assets are Forfeitable.**

The Defendant fails to submit any evidence in support of his bald assertion that the United States cannot establish probable cause as to forfeitability of the seized assets, and such failure is fatal to his request for a hearing. *United States v. Vogel*, 2010 WL 547344, *3 (E.D. Tex. Feb. 10, 2010) (defendant cannot rely on self-serving statement regarding the legitimate source of the property to satisfy the second *Jones-Farmer* requirement); *United States v. Peppel*, 2008 WL 687125, *2, *6 (S.D. Ohio 2008) (applying *Jamieson*; defendant is not entitled to probable cause hearing because he cannot satisfy the second prong; there was no reason to believe the grand jury erred in finding that the restrained property was traceable to criminal proceeds); *United States v. St. George*, 241 F. Supp.2d 875, 878-80 (E.D. Tenn. 2003) (following *Jones*; defendant must make threshold showing that she lacks alternative source of funds to retain counsel and that there is reason to believe there is no probable cause for the forfeiture of the restrained property; denying hearing to defendant who failed to make second showing).

The seizure warrants for the seized assets were issued on a finding of probable cause that criminal offenses were committed, and that the subject assets were proceeds traceable to or property involved in those offenses. *Monsanto*, 491 U.S. at 615). Since that time, this Court has twice found probable cause that the Defendant committed conspiracy to commit wire fraud. First this Court found probable cause when it issued the criminal complaint against Merrill and Wanzeler. Then, after an extended evidentiary hearing on the issue of pretrial release, the

District Court again held that the government has a "strong" case against the Defendant.[1]  The

second finding is especially important, because it implicitly rejects Merrill's argument that the

Government's affidavits in support of probable cause painted a misleading picture of whether

TelexFree operated as a pyramid scheme.  Judge Hillman deemed the case "strong" even after

defense counsel cross examined the Government's agent for two hours on the strength of the

Government's case.

Because the Defendant fails to submit any evidence to show that there was an error in the

determination of probable cause as to the substantive offense and as to traceability, his request

for a hearing should be denied.

**C.      Even if the Defendant Could Make the Required Threshold Showing, Any
         Hearing Should be Limited to Traceability.**

The Supreme Court in *Kaley* made clear that a defendant is not entitled to a hearing that

challenges a grand jury's finding of probable cause for the substantive offenses.  *Kaley*, 134

S.Ct. at 1098 ("The grand jury gets to say – without any review, oversight, or second-guessing –

whether probable cause exists to think that a person committed a crime.").  Accordingly, the

moment any indictment issues against Merrill, the subject matter of a hearing (if one was

granted) is limited solely to traceability issues.

Given the procedural posture of this case, however, even if the Court concluded that the

Defendant was entitled to a hearing, the Court should limit any such hearing to traceability

issues.  This is because the period of time that the parties will continue in this pre-indictment

stage is limited, as any indictment must issue pursuant to the timing requirements of the Speedy

Trial Act.  Accordingly, either (i) an indictment will issue within a matter of days and a probable

---

[1]  Further, in issuing the restraining order against Merrill and the other defendants of the SEC
Action, the Court found that the SEC had established a likelihood of success on the merits.
While clearly findings in a civil case are not dispositive to a criminal action, this holding is not
inconsistent with this Court's finding of probable cause.

cause hearing of the substantive charges will be precluded under *Kaley*, or (ii) no indictment will issue and the Defendant will not have a criminal case that he needs attorney's fees to defend (and will have access to more than $325,000 in assets in the meantime).  In addition, as discussed above, given the numerous times this Court has considered – and found – probable cause on the substantive offense, there is a very limited risk of an erroneous deprivation of assets based upon an error of that probable cause finding.

Moreover, in light of the recent evidentiary hearing Judge Hillman conducted on Merrill's appeal of this Court's detention ruling, another evidentiary hearing would add little, if anything, to the pre-indictment record of whether probable cause exists for the offenses charged in the complaint.  As to the probable cause component, it would simply rehash Judge Hillman's hearing – a case agent would take the stand, and defense counsel would make the same inquiries made in the earlier hearing in an attempt to undermine probable cause.  It would add nothing of significance to this Court's understanding of the case, derived from earlier affidavits and the available transcripts of both detention hearings.

Further, allowing a hearing as to probable cause on the substantive offenses, given the procedural posture of this case and the limited time for which such an inquiry is either allowable or relevant, would improperly provide the Defendant with a "sneak preview" of the case against him.  *Kaley,* 134 S. Ct. at 1090 (2014) (in support of its holding that the defendant has no right to a judicial redetermination of the grand jury's finding of probable cause when his property is restrained pre-trial, the Court explained that the Government should not have to choose between preserving the property and giving the defendant a "sneak preview" of its case and strategy beyond what the criminal rules or due process requires); *Holy Land Found.*, 493 F.3d at 475-76 (restricting the right to a post-restraint hearing only to certain situations would "spare the Government from

13

frivolous challenges that might impede its ongoing criminal investigations, but does so without jeopardizing the rights of property owners to access their assets in a timely fashion when necessary); *United States v. Swenson*, 2013 WL 4782134 (D. Idaho Sept. 5, 2013) (offering defendant who cannot satisfy the first *Jones-Farmer* requirement the option of a Rule 41(g) hearing at which he would have the burden of proving the lack of probable cause, but holding that defendant must first make a preliminary showing that the property is not forfeitable; this is needed to prevent the defendant from using the hearing to preview the Government's criminal case); *Simpson*, 2011 WL 195676 at *5-6 ("the Government should not be required to put on a dress rehearsal performance of part or all of its case-in-chief as the price for protecting its valid interest in preserving assets that are allegedly subject to forfeiture").  Accordingly, the Court should not allow the Defendant to use the pretext of a forfeiture hearing to preview the Government's case, and if a hearing is granted it must be limited to the issue of traceability.

## III.   <u>CONCLUSION</u>

For all the reasons stated herein, the Court should deny the Defendant's request for the release of funds that were seized for forfeiture, enabling the assets to be preserved during the pendency of the case and available for restitution to victims, and his request for a hearing on the same should be denied.

Respectfully submitted,

CARMEN M. ORTIZ,
United States Attorney,

By:   <u>/s/ Mary B. Murrane</u>
       CORY S. FLASHNER
       ANDREW E. LELLING
Dated:  July 14, 2014       Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing document, filed through the Electronic Case Filing system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>/s/ Mary B. Murrane</u>
Mary B. Murrane
Assistant United States Attorney

Date:   July 14, 2014