ORIGINAL



**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 21, 2016

**By Electronic Mail Only**

Robert M. Goldstein, Esq.
20 Park Plaza
Suite 1000
Boston, MA  02116

> Re:   *United States v. James Merrill,* No 14-40028-TSH

Dear Mr. Goldstein:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, James Merrill ("Defendant"), agree as follows with respect to the above-referenced case:

### 1.   **Change of Plea**

At the earliest practicable date, Defendant shall plead guilty to the following counts of the above-referenced Superseding Indictment: Count One (conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349) and Counts Two – Nine (wire fraud, in violation of 18 U.S.C. § 1343). Defendant expressly and unequivocally admits that he committed the crimes charged in Counts One to Nine of the Superseding Indictment and is in fact guilty of those offenses.

The U.S. Attorney agrees to dismiss Counts Ten to Seventeen of the Superseding Indictment following the imposition of sentence.

1

2.      **Penalties**

Defendant faces the following maximum penalties on each of the counts of the Superseding Indictment to which he is pleading guilty: incarceration for 20 years; supervised release for three years; a fine of $250,000, or twice the gross gain/loss involved in the offense, whichever is greater; a mandatory special assessment of $100 per count; restitution; and forfeiture to the extent charged in the Superseding Indictment.

3.      **Fed. R. Crim. P. 11(c)(1)(C) Plea**

This Plea Agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(C), and Defendant's guilty plea will be tendered pursuant to that provision. In accordance with Rule 11(c)(1)(C), if the District Court ("Court") accepts this Plea Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any aspect of this Plea Agreement, the U.S. Attorney may deem the Plea Agreement null and void. Defendant understands and acknowledges that he may not withdraw his plea of guilty unless the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5).

4.      **Sentencing Guidelines**

The United States Attorney will take the following positions at sentencing as to application of the United States Sentencing Guidelines ("USSG" or "Guidelines"). The Defendant reserves the right to dispute this calculation:

- in accordance with USSG § 2B1.1(a)(1), Defendant's base offense level is seven, because the offenses of conviction carry a statutory maximum term of imprisonment of 20 years or more;

- in accordance with USSG § 2B1.1(b)(1)(P), Defendant's offense level is increased by 30 levels, because the total loss involved in the offenses of conviction is more than $550,000,000;

- in accordance with USSG § 2B1.1(b)(2)(C), Defendant's offense level is increased by six levels, because the offenses of conviction resulted in substantial financial hardship to 25 or more victims;

- in accordance with USSG § 2B1.1(b)(10), Defendant's offense level is increased by two levels, because the offenses of conviction involved the use of sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means;

2

- in accordance with USSG § 3B1.1(a), Defendant's offense level is increased by four levels, because of the Defendant's role in the offense; and

- in accordance with USSG § 3E1.1, based on Defendant's prompt acceptance of personal responsibility for the offenses of conviction, the adjusted offense level is reduced by three.

The U.S. Attorney's agreement that the disposition set forth below in ¶ 5 is appropriate in this case is based, in part, on Defendant's prompt acceptance of personal responsibility for the offenses of conviction in this case.

The U.S. Attorney may, at her sole option, be released from her commitments under this Plea Agreement, including, but not limited to, her agreement that ¶ 5 constitutes the appropriate disposition of this case, if at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant:

(a)     Fails to admit a complete factual basis for the plea;

(b)     Fails to truthfully admit Defendant's conduct in the offenses of conviction;

(c)     Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(d)     Fails to provide truthful information about Defendant's financial status;

(e)     Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under USSG § 1B1.3;

(f)     Engages in acts that form a basis for finding that Defendant has obstructed or impeded the administration of justice under USSG § 3C1.1;

(g)     Intentionally fails to appear in Court or violates any condition of release;

(h)     Commits a crime; or

(i)     Attempts to withdraw his guilty plea.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

3

5.      **Agreed Disposition**

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the U.S. Attorney and Defendant agree that the following is a reasonable and appropriate disposition of this case:

(a)      not less than probation and not more than 120 months;

(b)      36 months of supervised release, should the Court impose incarceration;

(c)      a mandatory special assessment of $900, which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so);

(d)      restitution in an amount to be determined at sentencing; and

(e)      forfeiture as set forth in ¶ 8.

Within the sentencing range agreed to by the parties, the sentence to be imposed upon Defendant is within the discretion of the Court, subject to the advisory provisions of the USSG and the factors set forth in 18 U.S.C. § 3553(a).

In addition, Defendant agrees to engage in a complete and truthful proffer with representatives of the U.S. Attorney's Office and, if requested, representatives of other federal agencies and/or of the Brazilian Federal Police, concerning the events underlying the offenses of conviction.

6.      **Waiver of Right to Appeal and to Bring Future Challenge**

(a)      Defendant has conferred with his attorney and understands that he has the right to challenge his conviction in the United States Court of Appeals for the First Circuit ("direct appeal"). Defendant also understands that, in some circumstances, Defendant may be able to challenge his conviction in a future proceeding (collateral or otherwise), such as pursuant to a motion under 28 U.S.C. § 2255 or 28 U.S.C. § 2241. Defendant waives any right to challenge Defendant's conviction on direct appeal or in any future proceeding (collateral or otherwise).

(b)      Defendant has conferred with his attorney and understands that defendants ordinarily have a right to challenge in a direct appeal their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) and may sometimes challenge their sentences (including any orders relating to supervised release, fines, forfeiture, and restitution) in a future proceeding (collateral or otherwise). The rights that are ordinarily

4

available to a defendant are limited when a defendant enters into a Rule 11(c)(1)(C) agreement. In this case, Defendant waives any rights Defendant may have to challenge a sentence within the agreed-upon sentencing range set forth in ¶ 5 (including any agreement relating to supervised release, fines, forfeiture, and restitution) on direct appeal and in a future proceeding (collateral or otherwise), such as pursuant to 28 U.S.C. § 2255 and 28 U.S.C. § 2241. Defendant also waives any right Defendant may have under 18 U.S.C. § 3582 to ask the Court to modify the sentence, even if the USSG are later amended in a way that appears favorable to Defendant. Likewise, Defendant agrees not to seek to be resentenced with the benefit of any change to Defendant's Criminal History Category that existed at the time of Defendant's original sentencing. Defendant also agrees not to challenge the sentence in an appeal or future proceeding (collateral or otherwise) even if the Court rejects one or more positions advocated by any party at sentencing. In sum, Defendant understands and agrees that in entering into this Plea Agreement, the parties intend that Defendant will receive the benefits of the Plea Agreement and that the sentence will be final.

(c)     The U.S. Attorney agrees that she will not appeal the imposition by the Court of a sentence within the sentencing range agreed to by the parties as set out in ¶ 5, even if the Court rejects one or more positions advocated by either party at sentencing.

(d)     Regardless of the previous subparagraphs, Defendant reserves the right to claim that: (i) Defendant's lawyer rendered ineffective assistance of counsel under *Strickland v. Washington*; or (ii) the prosecutor in this case engaged in misconduct that entitles Defendant to relief from Defendant's conviction or sentence.

7.     **Waiver of Hyde Amendment Claim**

Defendant is aware that 111 Stat. 2440, 2520 (1997), the so-called "Hyde Amendment," authorizes courts in criminal cases to award to certain prevailing defendants attorneys' fees and other litigation expenses. In exchange for concessions the U.S. Attorney made in this Plea Agreement, Defendant voluntarily and knowingly waives any claim Defendant might assert under this statute based in whole or in part on the U.S. Attorney's agreement in Paragraph 1 to dismiss Counts Ten to Seventeen.

5

8.    **Forfeiture**

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited shall be the assets listed on **Exhibit A** hereto (the "Forfeitable Assets"). The Defendant also separately agrees to entry of a money judgment in an amount of the proceeds traceable to the commission of the offenses charged in Counts One through Nine. If the parties are unable to agree on the amount of a money judgment, the amount shall be determined by the Court. Defendant admits that the Forfeitable Assets are subject to forfeiture on the grounds that they are property, real or personal, that constitute, or are derived from, proceeds traceable to the commission of the offenses charged in Counts One through Nine. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the Forfeitable Assets. Defendant agrees to promptly take all steps necessary to pass clear title to the Forfeitable Assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any Forfeitable Assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that Forfeitable Assets are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the Forfeitable Assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding. In addition, if the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest, at any time from February 2012 to the present. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney.

Defendant also agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement. Defendant agrees not to challenge or seek review of any civil or administrative forfeiture of any Forfeitable Asset, and will not assist any third party with regard to such challenge or review.

Defendant hereby waives and releases any claims Defendant may have to any property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets. This waiver of claims specifically excludes the following seized or restrained property: (a) the real property located at 1 Coburn Drive, Ashland, Massachusetts; (b) $10,643 seized from Middlesex Savings Bank account number *****8181, held in the name of Cleaner Image Associates; and (c) $104,988.64 seized from Middlesex Savings Bank account number *****6876, held in the names of James Merrill and Kristin Merrill, each of which the United States has agreed to return to Defendant and exclude from forfeiture as directly forfeitable assets or as substitute assets to satisfy the money judgment or the restitution order, and as to which Defendant hereby waives any and all claims arising from or relating to the seizure, detention, restraint and return of the property.

9.    **Information For Presentence Report**

Defendant agrees to provide all information requested by the U.S. Probation Office concerning Defendant's assets.

10.   **Civil Liability**

By entering into this Plea Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, Defendant may have incurred or may incur as a result of Defendant's conduct and plea of guilty to the charges specified in Paragraph 1 of this Plea Agreement.

11.   **Withdrawal of Plea By Defendant or Rejection of Plea by Court**

Should Defendant move to withdraw his guilty plea at any time, or should the Court reject the parties' agreed-upon disposition of the case or any other aspect of this Plea Agreement, this Plea Agreement shall be null and void at the option of the U.S. Attorney. In this event, Defendant agrees to waive any defenses based upon the statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act with respect to any and all charges that could have been timely brought or pursued as of the date of this Plea Agreement.

12.   **Breach of Plea Agreement**

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Plea Agreement, has engaged in any of the activities set forth in ¶ 4(a)-(i), has violated any condition of Defendant's pretrial release, or has committed any crime following Defendant's execution of this Plea Agreement, the U.S. Attorney may, at her sole option, be released from her commitments under this Plea Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to her under the law, regardless whether she elects to be released from her commitments under this Plea

7

Agreement.  Further, the U.S. Attorney may pursue any and all charges which otherwise may have been brought against Defendant and/or have been, or are to be, dismissed pursuant to this Plea Agreement.  Defendant recognizes that his breach of any obligation under this Plea Agreement shall not give rise to grounds for withdrawal of Defendant's guilty plea, but will give the U.S. Attorney the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements made by Defendant and any information, materials, documents or objects provided by Defendant to the government, without any limitation, regardless of any prior agreements or understandings, written or oral, to the contrary.  In this regard, Defendant hereby waives any defense to any charges that Defendant might otherwise have based upon any statute of limitations, the constitutional protection against pre-indictment delay, or the Speedy Trial Act.

### 13.    Who Is Bound By Plea Agreement

This Plea Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 14.    Complete Plea Agreement

This Plea Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Andrew Lelling.

Very truly yours,

William Weinreb
Acting United States Attorney

By:

Sarah E. Walters
Chief, Economic Crimes Unit
Stephen E. Frank
Deputy Chief, Economic Crimes Unit

Andrew E. Lelling
Neil J. Gallagher, Jr.
Assistant U.S. Attorneys

8

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that (a) it accurately sets forth my plea agreement with the United States Attorney's Office for the District of Massachusetts; (b) there are no unwritten agreements between me and the United States Attorney's Office; and (c) no official of the United States has made any unwritten promises or representations to me, in connection with my change of plea. In addition, I have received prior offers to resolve this case, but rejected them. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Plea Agreement is in my best interest.

James Merrill
Defendant

Date: _10/24/16_

I certify that James Merrill has read this Plea Agreement and that we have discussed its meaning. I believe he understands the Plea Agreement and is entering into the Plea Agreement freely, voluntarily and knowingly. I also certify that, in addition to this offer, the U.S. Attorney has previously extended offers to resolve this case, which I fully discussed with Defendant before Defendant rejected them.

Robert M. Goldstein, Esq.
Attorney for Defendant

Date: _10/24/16_

9

# EXHIBIT A

## FORFEITABLE ASSETS

a.      $6,152,341.44 payable to TelexFree LLC from cashier's check number 6597301168, issued by Wells Fargo Bank on April 11, 2014;

b.      $27,855.57 payable to TelexFree LLC from cashier's check number 6597301173, issued by Wells Fargo Bank on April 11, 2014;

c.      $16,970,714.14 payable to TelexFree LLC from cashier's check number 6597301169, issued by Wells Fargo Bank on April 11, 2014;

d.      $1,968,777.06 payable to TelexFree LLC from cashier's check number 6597301166, issued by Wells Fargo Bank on April 11, 2014;

e.      $429,120.31 payable to TelexFree LLC from cashier's check number 6597301167, issued by Wells Fargo Bank on April 11, 2014;

f.      $10,398,000.00 payable to TelexFree Dominicana SRL from cashier's check number 6647301103, issued by Wells Fargo Bank on April 3, 2014;

g.      $2,000,634.76 payable to Katia B Wanzeler from cashier's check number 6597301170, issued by Wells Fargo Bank on April 11, 2014;

h.      $50.03 payable to JC Real Estate Management Co from cashier's check number 6597300418, issued by Wells Fargo Bank on April 11, 2014;

i.      $728.44 payable to JC Real Estate Management Co from cashier's check number 6597300715, issued by Wells Fargo Bank on April 11, 2014;

j.      $74.91 payable to JC Real Estate Investment Co from cashier's check number 6597300416, issued by Wells Fargo Bank on April 11, 2014;

k.      $3,798,629.63 payable to Carlos Wanzeler from cashier's check number 6647301104, issued by Wells Fargo Bank on April 3, 2014;

l.      Approximately $34,615,900 seized from i-Payout/International Payout;

m.      $4,561,874.25 seized from Pro Pay, Inc.;

n.      $10,536,667.55 seized from Base Commerce LLC;

o.      $98,419.02 seized from Bank of New England bank account number ***4031, held in the name of TelexFree LLC;

p.      $129,087.84 seized from Digital Credit Union bank account number ****7922, held in the name of Above & Beyond the Limit LLC;

q.      $2,487,204.68 seized from PNC Bank account number******1813, held in the name of TelexFree Financial, Inc.;

r.      $601,608.61 seized from Wells Fargo Bank account number ******3387, held in the name of TelexFree Financial, Inc.;

s.      $71,450.82 seized from Wells Fargo Bank account number ******4252, held in the name of TelexFree Financial, Inc.

t.      All funds on deposit in Infinex Financial Group account number *****6844, held in the name of TelexFree LLC;

u.      All funds on deposit in Infinex Financial Group account number *****1039, held in the name of TelexFree LLC;

v.      All funds on deposit in Massachusetts Financial Services account number ****-*******6997, held in the name of TelexFree LLC;

w.      All funds on deposit in Waddell & Reed, Inc., account number ****4903, held in the name of TelexFree LLC;

x.      All funds on deposit in Waddell & Reed account number ****1090, held in the name of James Merrill and Kristin Merrill;

y.      All funds on deposit in Waddell & Reed account number ****6892, held in the name of James Merrill and Kristin Merrill;

z.      All funds on deposit in Wells Fargo Advisors LLC account number ****3207, held in the name of Katia H. Barbosa, a/k/a Katia Wanzeler;

aa.     Approximately $1,159,847.53 payable to TelexFree from 80 cashier's checks turned over to the United States on or about May 9, 2014;

bb.     $10,314 in United States currency seized on or about April 15, 2014 from 225 Cedar Hill Street, Marlborough, Massachusetts;

cc.     $6,030 in United States currency seized on or about April 18, 2014 from 373 Howard Street, Northborough, Massachusetts;

dd.     the real property located at 373 Howard Street, Northborough, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Deed recorded on May 1, 2013, with the Worcester District

2

Registry of Deeds, book 50825, page 285;

ee.     the real property located at 462-464 Coburn Avenue, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on March 25, 2013, with the Worcester District Registry of Deeds, book 50634, page 321;

ff.     the real property located at 30D Mount Avenue, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on May 6, 2013, with the Worcester District Registry of Deeds, book 50845, page 304;

gg.     the real property located at 41-A Mount Avenue, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Deed recorded on October 4, 2002, with the Worcester District Registry of Deeds, book 27685, page 030;

hh.     the real property located at 63 Prospect Street, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on August 30, 2012, with the Worcester District Registry of Deeds, book 49535, page 31;

ii.     the real property located at 2321 NW 37th Avenue, Coconut Creek, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on November 3, 2003, with the Broward County Registry of Deeds, book 36354, page 498;

jj.     the real property located at 4506 San Mellina Drive, Coconut Creek, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Special Warranty Deed, recorded on December 3, 2013, with the Broward County Registry of Deeds, book 50374, page 223;

kk.     the real property located at 1097 NW 82nd Terrace, Coral Springs, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Special Warranty Deed recorded on January 6, 2014, with the Broward County Registry of Deeds, book 50454, page 1121;

ll.     the real property located at 5730 SW 36th Court, Davie, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on July 2, 2013, with the Broward County Registry of Deeds, book 49946, page 1800;

mm.    the real property located at 476 NW 3rd Avenue, Deerfield Beach, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on February 15, 2013, with the Broward County Registry of Deeds, book 49513, page 1047;

nn.    the real property located at 1708 NW 5th Street, Fort Lauderdale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on April 21, 2014, with the Broward County Registry of Deeds, book 50714, page 1351;

oo.    the real property located at 2390 NW 6th Court, Fort Lauderdale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on May 7, 2013, with the Broward County Registry of Deeds, book 49768, page 1616;

pp.    the real property located at 2780 NW 6th Court, Fort Lauderdale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on May 7, 2013, with the Broward County Registry of Deeds, book 49768, page 1582;

qq.    the real property located at 411 NW 12th Avenue, Fort Lauderdale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on September 4, 2013, with the Broward County Registry of Deeds, book 50136, page 559;

rr.    the real property located at 642 NW 22nd Road, Fort Lauderdale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on July 24, 2013, with the Broward County Registry of Deeds, book 50013, page 393;

ss.    the real property located at 524 NW 10th Street, Hallandale, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on June 17, 2013, with the Broward County Registry of Deeds, book 49896, page 636;

tt.    the real property located at 2740 NE 47th Street, Lighthouse Point, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on November 6, 2012, with the Broward County Registry of Deeds, book 49222, page 1051;

uu.    the real property located at 208 SW 1st Court, Pompano Beach, Florida, including all building, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded with the Broward County Registry of Deeds on December 19, 2013, with the Broward County Registry of Deeds, book 50419,

4

page 1817;

vv.     the real property located at 4260 NE 12th Terrace, Pompano Beach, Florida,
        including all buildings, appurtenances, and improvements thereon, more fully
        described in a Warranty Deed recorded on February 20, 2013, with the Broward
        County Registry of Deeds, book 49527, page 498;

ww.     the real property located at 5316 NE 14th Avenue, Pompano Beach, Florida,
        including all buildings, appurtenances, and improvements thereon, more fully
        described in a Warranty Deed recorded on April 16, 2013, with the Broward
        County Registry of Deeds, book 49701, page 1736;

xx.     the real property located at 167 NW 38th Street, Miami, Florida, including all
        buildings appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on July 25, 2013, with the Miami-Dade County Registry
        of Deeds, book 28740, page 985;

yy.     the real property located at 175 NW 38th Street, Miami, Florida, including all
        buildings, appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on July 25, 2013, with the Miami-Dade County Registry
        of Deeds, book 28740, page 985;

zz.     the real property located at 249 NE 55th Terrace, Miami, Florida, including all
        buildings, appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on May 9, 2013, with the Miami-Dade County Registry
        of Deeds, book 28621, page 4166;

aaa.    the real property located at 231 NW 57th Street, Miami, Florida, including all
        buildings, appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on March 28, 2013, with the Miami-Dade County
        Registry of Deeds, book 28552, page 4250;

bbb.    the real property located at 1553 NE 152nd Street, Miami, Florida, including all
        buildings, appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on February 7, 2013, with the Miami-Dade County
        Registry of Deeds, book 28479, page 1010;

ccc.    the real property located at 900 38th Street, West Palm Beach, Florida, including
        all buildings, appurtenances, and improvements thereon, more fully described in a
        Warranty Deed recorded on March 6, 2013, with the Palm Beach County Registry
        of Deeds, book 25846, page 331;

ddd.   all right, title and interest in a Note and Mortgage held by Acceris Realty Estate LLC in the amount of $284,214.66 secured by the real property located at 240 Union Street, Ashland, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on June 24, 2013 with the Southern Middlesex Registry of Deeds, book 62309, page 56. The Mortgage was recorded with the Southern Middlesex Registry of Deeds on June 24, 2013, book 62309, page 56, including all funds received by the United States toward payment on such Note and Mortgage;

eee.   all right, title and interest in a Note and Mortgage held by Acceris Realty Estate LLC in the amount of $193,000 secured by the real property located at 216 West Union Street, Ashland, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on December 13, 2013 with the Southern Middlesex Registry of Deeds, book 63057, page 122. The Mortgage was recorded with the Southern Middlesex Registry of Deeds on December 13, 2013, book 63057, page 126, including all funds received by the United States toward payment on such Note and Mortgage;

fff.   all right, title and interest in a Note and Mortgage held by Above & Beyond the Limit, LLC in the amount of $308,750 secured by the real property located at 3460 Greenview Terrace, Margate, Florida, including all buildings, appurtenances, and improvements thereon, more fully described in a Warranty Deed recorded on December 9, 2013 with the Broward County Registry of Deeds, book 50390, page 774. The Mortgage was recorded with the Broward County Registry of Deeds, book 50390, page 776, including all funds received by the United States toward payment on such Note and Mortgage;

ggg.   one 2014 BMW X6 bearing vehicle identification number 5UXFG2C53E0C43173 and Massachusetts registration 312HL4;

hhh.   one 2013 BMW X5 bearing vehicle identification number 5UXZV4C59D0E13307 and Massachusetts registration 918VS4;

iii.   one 2013 BMW Z4 bearing vehicle identification number WBALL5C53DJ103886 and Massachusetts registration 376VK8;

jjj.   one 2009 Ferrari 430 bearing vehicle identification number FFEW59A290167021 and Florida registration CAML43;

kkk.   one 2013 Porsche Boxster bearing vehicle identification number WP0CA2A80DK112074 and Massachusetts registration 626RJ2;

lll.   one 2013 Toyota Highlander bearing vehicle identification number JTEDC3EH3D2013050 and Massachusetts registration 3WYE70; and

mmm. one 2007 Sea Ray 40 Motor Yacht, bearing hull number SERP7118K607;

nnn. one 2003 Maxum boat, bearing hull number MXYA46MVD303;

ooo. all funds on deposit in Loyal Bank (located in St. Vincent and the Grenadines) account number ***********2840 held in the name of Carlos Wanzeler;

ppp. all funds on deposit in Overseas Chinese Bank Corporation Account Number ********2001 held in the name of Carlos Wanzeler;

qqq. real property described as Units 101, 102, 103, 201, 202, 301, 302, 303, 304 and 402 of the Beverly Condominiums located at 900 NW 45th Street, Pompano Beach, FL 33064-1162;

rrr. $250,149.77 seized from Banterra Bank account number ****5519 held in the name of Craft Trust Services LLC;

sss. $22,840.33 seized from Banterra Bank account number 40025454, held in the name of Craft Financial Solutions LLC;

ttt. the real property located at 59 Pleasant Street, Clinton, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on May 6, 2013, with the Worcester District Registry of Deeds, book 50845, page 301; and

uuu. the real property located at 149 Barnard Road, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded on May 6, 2013, with the Worcester District Registry of Deeds, book 50845, page 303;

vvv. the real property described as Lot 271, Trails at Canyon – Plat Four, according to the plat thereof, as recorded in Plat Book 115, at Page 1, of the public records of Palm Beach County, Florida, more fully described in a Warranty Deed recorded on February 27, 2014, with the Palm Beach County Registry of Deeds, Book 26635, Page 1345; and

www. all funds on deposit in PNC account **-****-3623 held in the name of Carlos Wanzeler.

7

**EXHIBIT B**

**WAIVER OF CLAIM AND CONSENT TO FORFEITURE**

The undersigned, after consultation with counsel, waives any and all claims to, and consents to the forfeiture to the United States of all assets listed in Exhibit A to the plea agreement between the United States and James Merrill in Criminal Action 14-40028-TSH (the "Forfeitable Assets").

The undersigned further agrees to promptly take all steps necessary to pass clear title to the Forfeitable Assets, in which the undersigned and/or James Merrill may own, control or have any interest, to the United States, including but not limited to executing any and all documents necessary to: (i) transfer such title to the United States; and (ii) assist in bringing any assets located outside of the United States within the jurisdiction of the United States.

The undersigned further agrees to refrain from taking any actions or engaging in any activity whatsoever that would assist, cause or otherwise result in the Forfeitable Assets being transferred, distributed, sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture, except as described above.

The undersigned further hereby releases and forever discharges the United States, its officers, agents, and employees, their heirs, successors, or assigns, from any and all actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity that it, its successors, or assigns ever had, now have, or may have in the future in connection with the detention, seizure, restraint and/or forfeiture for the Forfeitable Assets.

The undersigned hereby executes this waiver and consent as her free act and deed.

**KRISTIN MERRILL,**

*Kristin Merrill*

Date: 10/24/2016